HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
BY: James C. Haggerty, Esquire; Jeffrey K. Stanton, Esquire; Dennis C. Coyne, Esquire
I.D. # 30003; 311249; 316918
1801 Market Street, Suite 1100
Philadelphia, PA 19103 Attorneys for Plaintiff
(267) 350-6600

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEAN ENGLEHART AND ROBBIN L. ENGLEHART, H/W, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS | : | |
| vs. | : | |
| | : | No. 5:25-CV-06655-JFL |
| WESTFIELD INSURANCE COMPANY | : | |

**CIVIL ACTION – SECOND AMENDED CLASS ACTION COMPLAINT**

**Introduction**

1. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, h/w, individually and on behalf of a class of similarly situated persons, file this Second Amended Complaint in accordance with the Court's September 22, 2026 Order and Opinion. Consistent with the Court's rulings, the plaintiffs have removed the individual claims of Dean R. Englehart and Robbin L. Englehart for declaratory relief and the allegations asserting breach of the implied covenant of good faith and fair dealing, which the Court held is subsumed within a breach of contract claim. The plaintiffs have also amended their statutory bad faith claim to provide additional factual support in accordance with the Court's dismissal of that claim without prejudice. The remaining claims and allegations are otherwise substantially unchanged.

**The Parties**

2. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are adult individual

citizens and residents of the Commonwealth of Pennsylvania, residing at 66 Pleasant Road, Gordonville, Pennsylvania 17529.

3. At all material times, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, were husband and wife.

4. The defendant, Westfield Insurance Company ("Westfield"), is a business corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at 1 Park Circle, Westfield Center, Ohio, being duly authorized to and conducting business in the Commonwealth of Pennsylvania.

5. At all times material hereto, the defendant, Westfield, was duly authorized to and engaged in the business of issuing policies of automobile insurance throughout the United States, including in the Commonwealth of Pennsylvania.

6. The defendant, Westfield, regularly and routinely conducts business in the City and County of Philadelphia.

7. The present action seeks: (a) declaratory relief on behalf of a class of similarly situated individuals; (b) contractual underinsured motorist benefits on behalf of the individual plaintiffs, Dean R. Englehart and Robbin L. Englehart; (c) statutory bad-faith damages on behalf of the individual plaintiffs; and (d) loss of consortium damages on behalf of the plaintiff, Robbin L. Englehart.

8. Count I seeks declaratory relief, alone, on behalf of the class.

9. Count I asks the Court to declare that the policies issued by the defendant, Westfield, must provide underinsured motorist coverage in accordance with Pennsylvania law and without the unlawful application of liability credits against the stated UIM policy limits, as Westfield has done in denying the plaintiffs' claims.

10. Count II, on the other hand, seeks monetary damages, alone, on behalf of the individual plaintiffs, Dean R. Englehart and Robbin L. Englehart, and not on behalf of the members of the class.

11. Accordingly, Count I and Count II of the Second Amended Complaint are not duplicative. Count I seeks declaratory relief on behalf of the members of the class and does not seek monetary damages. Count II seeks recovery of monetary damages, namely, underinsured motorist benefits, on behalf of the individual plaintiffs alone. Count I and Count II are separate and distinct, and the claims for relief are not duplicative.

## **The Collision**

12. On October 29, 2023, the plaintiff, Dean R. Englehart, was operating his 2018 Dodge Caravan in a southbound direction on Belmont Road, approaching the intersection of Belmont Road and State Route 30 ("SR 30"), in Paradise Township, Lancaster County, Pennsylvania.

13. At all material times, the plaintiff, Robbin L. Englehart, was a passenger in the vehicle operated by her husband, the plaintiff, Dean R. Englehart.

14. At all material times, the plaintiff, Dean R. Englehart, was a paraplegic and the 2018 Dodge Caravan he was operating had been modified to include hand controls and other necessary adaptive equipment.

15. As the vehicle operated by the plaintiff, Dean R. Englehart, entered the intersection of Belmont Road and SR 30, a tractor-trailer operated by Michael A. Miller, traveling westbound on SR 30, disregarded a red traffic signal, unlawfully entered the intersection, and violently collided with the vehicle operated by the plaintiff, Dean R. Englehart.

16. At the time of the collision, the plaintiff, Dean R. Englehart, had a green traffic signal and the legal right-of-way to proceed through the intersection of Belmont Road and SR 30.

17. In fact, subsequent investigation revealed that the defendant, Michael A. Miller, had an unobstructed view of the red traffic signal for at least six (6) seconds before the crash and was operating the tractor-trailer at speeds in excess of the posted speed limit.

18. At all times relevant hereto, the vehicle operated by Michael A. Miller was owned, leased, supplied, entrusted, maintained, and/or otherwise controlled by National Distributors Leasing, Inc. ("National Distributors").

19. At all times relevant hereto, Michael A. Miller was acting as an agent, servant, workman, and/or employee of National Distributors and was acting within the course and scope of his employment and/or agency.

20. At the aforementioned time and place, Michael A. Miller negligently, carelessly, and recklessly failed to stop his vehicle, causing it to collide violently with the driver's side of the plaintiffs' vehicle without warning.

21. The collision was caused solely and exclusively by the negligence, carelessness, and recklessness of Michael A. Miller and was due in no manner whatsoever to any act or failure to act on the part of the plaintiff, Dean R. Englehart.

**Injuries and Damages of Dean R. Englehart**

22. As set forth above, at all material times, the plaintiff, Dean Englehart, was paralyzed from the waist down and utilized a power wheelchair, which he operated and maneuvered with his right, dominant hand.

23. As a result of the collision, the plaintiff, Dean R. Englehart, sustained a severe shock to the nerves and nervous system and severe and numerous bodily injuries including, but not limited to: fractures to the second and fourth metacarpals of the right hand, necessitating open reduction internal fixation surgery at those locations; bursitis in the right elbow, requiring two (2) aspiration

procedures; pain in the right hand, ring finger, small finger and right elbow; weakness in the right hand; as well as other severe neurologic, psychologic and orthopedic injuries as well as any other injuries that may be discovered or diagnosed, the extent of which may not yet be known, and the plaintiff has suffered and may and probably will in the future continue to suffer great pain and agony, all of which may be permanent in nature.

24. As a direct result of the collision and the severe injuries to his right upper extremity which required multiple surgical procedures, the plaintiff, Dean R. Englehart, was rendered entirely disabled and unable to independently perform activities of daily living for an extended period of time.

25. As a result of the injuries sustained in the collision, the plaintiff, Dean R. Englehart, has suffered and will continue to suffer serious pain, physical restrictions, and permanent disability throughout his lifetime.

26. The injuries of the plaintiff, Dean R. Englehart, amounted to a serious injury in that they resulted in a serious impairment of bodily function, thereby seriously limiting the plaintiff in many of his daily activities.

27. By reason of the aforesaid, the plaintiff, Dean R. Englehart, was unable to enjoy and pursue the usual activities of life and his daily activities and he has suffered, is suffering and will suffer in the future from loss of the enjoyment and pleasures of life, all of which is to his great loss and detriment.

28. By reason of the aforesaid, the plaintiff, Dean R. Englehart, has incurred and will continue to incur expenses for medical treatment and care and may be required to expend such sums indefinitely into the future.

**Injuries and Damages of Robbin L. Englehart**

29. As a result of the collision, the plaintiff, Robbin L. Englehart, sustained a severe shock to the nerves and nervous system and severe and numerous bodily injuries including, but not limited to: pain in the abdomen; pain in the chest; pain in the left lateral knee; pain in the right shin; pain in the neck; pain in the back; pain in the wrist; abrasions to the right shoulder; abrasions to the left hip; weakness in gluteal muscles; weakness in hamstring muscles; muscle spasms; anxiety; depression; hematoma of the right clavicle; lower-level skin tear on the right leg; traumatic hematoma of the right lower leg; cellulitis of the right leg; as well as other severe neurologic, psychologic and orthopedic injuries as well as any other injuries that may be discovered or diagnosed, the extent of which may not yet be known, and the plaintiff has suffered and may and probably will in the future continue to suffer great pain and agony, all of which may be permanent in nature.

30. As a result of the aforementioned injuries, the plaintiff, Robbin L. Englehart, has suffered and will continue to suffer serious pain, physical restrictions, and permanent disability throughout her lifetime.

31. The injuries of the plaintiff, Robbin L. Englehart, amounted to a serious injury in that they resulted in a serious impairment of bodily function, thereby seriously limiting the plaintiff in many of her daily activities.

32. By reason of the aforesaid, the plaintiff, Robbin L. Englehart, was unable to enjoy and pursue the usual activities of life and her daily activities and she has suffered, is suffering and will suffer in the future from loss of the enjoyment and pleasures of life, all of which is to her great loss and detriment.

33. By reason of the foregoing, the plaintiff, Robbin L. Englehart, has incurred and will

continue to incur expenses for medical treatment and care and may be required to expend such sums indefinitely into the future.

34. By reason of the foregoing, the plaintiff, Robbin L. Englehart, has been unable to attend to her usual occupation, resulting in financial detriment and loss of income.

35. By reason of the foregoing, the plaintiff, Robbin L. Englehart, has sustained a loss of earning capacity and is reasonably expected to incur additional lost wages and benefits in the future.

36. By reason of the foregoing, the plaintiff, Robbin L. Englehart, sustained past wage loss and a loss of future earnings and earning capacity as a result of her accident-related early retirement, as set forth more fully below.

37. As a direct and proximate result of the aforementioned collision, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, also sustained substantial property damage and sustained personal loss thereby including, but not limited to:

(a) total loss of their specially adapted 2018 Dodge Caravan;

(b) total loss of the plaintiff, Dean Englehart's, motorized power wheelchair;

(c) total loss of wheelchair lift conversion equipment contained in the 2018 Dodge Caravan; and,

(d) total loss of hand controls and conversion equipment contained in the 2018 Dodge Caravan.

38. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are entitled to be fully compensated for the injuries and losses suffered in the October 29, 2023 collision.

**Insurance Coverage**

39. At the time of the October 29, 2023 motor vehicle collision, the tractor trailer operated by Michael A. Miller was insured under a commercial auto policy of insurance issued by the Arch Insurance Company ("Arch") to National Distributors providing coverage in accordance

with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. ("MVFRL") ("Arch Policy").

40. The Arch Policy provided, *inter alia*, $1,000,000.00 in liability coverage.

41. Following the collision, Arch Insurance Company paid a total of $135,000.00 to settle bodily injury claims asserted by individuals other than the plaintiffs, Dean R. Englehart and Robbin L. Englehart, arising from the October 29, 2023 collision, thereby reducing the limits available to the plaintiffs to $865,000.00.

42. At the time of the collision, there existed, in full force and effect, a personal auto policy of insurance issued by the defendant, Westfield, to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, ("Westfield Policy"), providing coverage in accordance with the Pennsylvania MVFRL. A true and correct copy of the Westfield Policy is attached hereto as Exhibit "A".

43. The Westfield Policy provided, *inter alia*, underinsured motorist ("UIM") coverage in the amount of $100,000.00/$300,000.00, stacked for two (2) vehicles, resulting in $200,000.00 in available UIM benefits per person.

**<u>Tort Claim</u>**

44. Following the October 29, 2023 collision, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, made claim upon Michael A. Miller, National Distributors, and Arch Insurance Company seeking recovery of damages in tort.

45. Thereafter, Arch Insurance Company, on behalf of Michael A. Miller and National Distributors, tendered the remaining $865,000.00 in available liability coverage under the Arch Policy as follows:

(a) $173,000.00 to the plaintiff, Robbin L. Englehart; and

(b) $692,000.00 to the plaintiff, Dean R. Englehart.

46. As the value of the claims for injuries and damages suffered by the plaintiffs, Dean Englehart and Robbin L. Englehart, exceeded the liability limits of coverage available under the Arch Policy, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, made claim upon the defendant, Westfield, for underinsured motorist benefits under the Westfield Policy

**Underinsured Motorist Claim**

47. Upon receipt of the tender of the remaining available liability coverage under the Arch Policy, by correspondence dated April 15, 2025, counsel for the plaintiffs, Dean R. Englehart and Robbin L. Englehart, wrote to the defendant, Westfield, advising of the settlement offer and requesting consent to settle the claims. A true and correct copy of the April 15, 2025 correspondence is attached hereto as Exhibit "B".

48. By response dated May 7, 2025, Claims Representative Cindy Norton of the defendant, Westfield, wrote to counsel for the plaintiffs stating, in pertinent part, as follows:

> We agree to waive subrogation and consent to your settlement with Arch Insurance for their remaining limits.

A true and correct copy of the May 7, 2025 email is attached hereto as Exhibit "C".

49. By correspondence dated June 9, 2025, counsel for the plaintiffs provided to Claims Representative Cindy Norton, of the defendant, Westfield, a comprehensive compendium detailing the facts and circumstances of the collision, as well as the resulting injuries, damages, and medical treatment, including, *inter alia*, the following:

(a) Overview of liability with police report and photographs;

(b) Dashcam video evidencing Mr. Miller's speeding, inattention, and red-light violation;

(c) Expert report of Daniel R. Jones, LPI, CPI, concluding the crash was solely caused by Michael A. Miller;

(d) Summary and documentation of Robbin Englehart's injuries, treatment, medical records, and expenses;

(e) Summary and documentation of Dean Englehart's injuries, treatment, medical records, and expenses;

(f) Documentation of additional damages including loss of van, power wheelchair, mobility equipment, and medical liens;

(g) Evidence of Robbin Englehart's lost wages and forced early retirement; and,

(h) Evidence of permanent restrictions and loss of life's pleasures for the plaintiffs, Dean Englehart and Robbin Englehart.

A true and correct copy of the June 9, 2025 correspondence, without attachments, is attached hereto as Exhibit "D".

50. With respect to Dean Englehart, the June 9, 2025 submission advised Westfield that Dean was a paraplegic before the collision, was right-hand dominant, and relied upon his dominant right hand to operate his power wheelchair and maintain his independence.

51. The submission further documented that Dean sustained comminuted fractures of the second and fourth metacarpals of his dominant right hand, underwent open reduction internal fixation, remained hospitalized for approximately one week, and incurred approximately $90,000.00 in medical expenses.

52. The materials submitted to Westfield further documented continuing right-hand pain, stiffness, tenderness, and swelling following surgery, as well as the development of right-elbow bursitis requiring aspiration procedures.

53. Westfield was also provided with the November 22, 2024 report of Richard J. Mandel, M.D., a board-certified orthopedic surgeon who examined Dean and reviewed his medical records.

54. Dr. Mandel's examination documented objective loss of grip and pinch strength in Dean's dominant right hand, pain with forceful gripping, and mild right forearm muscle atrophy, with Dr. Mandel further noting that Dean provided full effort and exhibited no signs of embellishment or submaximal effort.

55. Dr. Mandel opined, to a reasonable degree of medical certainty, that Dean had reached maximum medical improvement, had a poor prognosis for further improvement, and was left with permanent residual grip and pinch weakness, including permanent fifty percent (50%) weakness of his dominant right hand.

56. Dr. Mandel further opined that Dean's permanent dominant-hand impairment was particularly significant because his preexisting paraplegia prevented him from using his lower body to compensate for his diminished hand function and would require him to permanently rely upon assistance for certain activities.

57. Dr. Mandel further opined that post-traumatic arthrosis was more likely than not to develop in the future and would result in increased pain and further loss of grip strength and hand function.

58. With respect to Robbin Englehart, the June 9, 2025 submission documented approximately $40,000.00 in medical expenses and treatment that included hospitalization, physical therapy, wound care, medical treatment, and psychological counseling.

59. The materials submitted to Westfield documented that Robbin's traumatic right-leg hematoma subsequently developed cellulitis, required antibiotic treatment, was slow to heal, and ultimately required referral to a specialized wound-care clinic, debridement, and continuing wound care.

60. The plaintiffs' submission further documented that Robbin developed anxiety and depression following the collision, was prescribed medication, was referred for counseling, and underwent individual psychological counseling from January through April 2024.

61. The plaintiffs also submitted documentation establishing that Robbin had worked for the same employer since 1980 and, at the time of the collision, worked approximately thirty-two (32) hours per week at an hourly rate of $29.85, resulting in weekly earnings of approximately $955.20 and annual earnings of approximately $49,670.40.

62. As a result of her accident-related injuries, Robbin remained completely out of work for approximately six (6) weeks following the collision and thereafter returned to work on December 11, 2023, on restricted hours, with her work schedule reduced from approximately thirty-two (32) hours per week to twenty (20) hours per week.

63. Based upon the wage information provided to Westfield, Robbin sustained approximately $11,462.40 in lost earnings between the date of the collision and her retirement on April 1, 2024.

64. The plaintiffs further advised Westfield that Robbin continued to experience difficulty performing her employment duties and caring for Dean because of her accident-related injuries, that prior to the collision she had planned to continue working until her retirement, and that as a result of her accident-related injuries she was forced to retire early from her longstanding employment on April 1, 2024.

65. At the time of the accident, Robbin was 61 years old.

66. As a result of the accident, Robbin retired at 62 years old.

67. Robbin intended to continue working until at least age 65.

68. Based upon her pre-accident earnings of approximately $49,670.40 per year, Robbin's premature retirement on April 1, 2024 resulted in a claimed loss of future earnings of approximately $137,958.00 through age 65, exclusive of lost employment benefits.

69. Together with her approximately $11,462.40 in pre-retirement wage loss, Robbin's claimed past and future lost earnings through age 65 total approximately $149,420.00, exclusive of lost employment benefits.

70. In support of Robbin's wage-loss and loss-of-future-earnings claims, the plaintiffs submitted to Westfield her retirement letter, wage-and-salary verification forms, physician notes, and documentation concerning income-loss benefits.

71. Thereafter, by correspondence dated August 8, 2025, Claims Representative Cindy Norton on behalf of the defendant, Westfield, denied and disclaimed coverage for the underinsured motorist claims of the plaintiffs, Dean R. Englehart and Robbin L. Englehart. See a true and correct copy of the August 8, 2025 correspondence attached hereto as Exhibit "E".

72. With respect to Dean Englehart, Westfield acknowledged Dr. Mandel's finding that Dean demonstrated approximately fifty percent (50%) grip and pinch weakness but nevertheless stated that Dean's symptoms had resolved by March 2024, discounted the documented residual weakness, and characterized future treatment as "speculative."

73. Westfield's conclusion that Dean's symptoms had resolved by March 2024 was inconsistent with Dr. Mandel's subsequent November 2024 examination and opinions documenting objective loss of grip and pinch strength, permanent fifty percent (50%) weakness of Dean's dominant right hand, ongoing pain, maximum medical improvement, a poor prognosis for further improvement, the likelihood of future post-traumatic arthrosis, and the particular functional consequences of that permanent impairment in light of Dean's preexisting paraplegia.

74. Westfield nevertheless concluded, without identifying any contrary medical examination or medical opinion, that Dean's $692,000.00 tort recovery fully compensated him for his injuries and damages

75. With respect to Robbin Englehart, Westfield characterized her injuries as "soft-tissue injuries" and her psychological condition as "temporary psychological distress," notwithstanding the documented hematoma, cellulitis, antibiotic treatment, wound care, debridement, medication, and psychological counseling contained in the materials Westfield acknowledged reviewing.

76. Westfield further characterized Robbin as having "elected to retire approximately five months" after the collision despite having been advised that she had worked for the same employer since 1980, sustained accident-related wage loss, experienced continuing difficulty performing her employment duties, planned to continue working until retirement, and retired early as a result of her accident-related injuries.

77. Westfield nevertheless concluded that Robbin's $173,000.00 tort recovery fully compensated her for her injuries, lost earnings, and other damages despite having been provided documentation of approximately $40,000.00 in medical expenses, her pre-retirement wage loss, and her claim for additional loss of future earnings resulting from her accident-related early retirement.

78. In addition to its evaluation of the plaintiffs' injuries and damages, Westfield's August 8, 2025 denial characterized Dean's $692,000.00 tort recovery and Robbin's $173,000.00 tort recovery as "liability credits" to be applied directly against the $200,000.00 per-person UIM coverage available under the Policy.

79. Westfield expressly represented that, "[i]n accordance with Pennsylvania law," those liability credits reduced the available UIM coverage and further represented that "both credits meet or exceed the applicable UIM limit of $200,000 per person."

80. Westfield's representation was facially incorrect with respect to Robbin because her $173,000.00 tort recovery did not meet or exceed the $200,000.00 per-person UIM limit.

81. More fundamentally, Westfield's stated methodology was contrary to Pennsylvania law because it treated the tort recoveries as reducing the amount of UIM coverage available under the Policy rather than applying those recoveries against the plaintiffs' total compensatory damages.

82. Pennsylvania is an excess-coverage jurisdiction for purposes of underinsured motorist coverage.

83. Under Pennsylvania law, amounts recovered from a tortfeasor are applied against an insured's total compensatory damages to determine the amount of uncompensated damages remaining after exhaustion of the tortfeasor's liability coverage.

84. The insured's UIM coverage is then available, up to the applicable UIM policy limit, to compensate those remaining damages.

85. Pennsylvania law does not permit an insurer to subtract the amount recovered from a tortfeasor from the insured's stated UIM policy limit so as to reduce the amount of UIM coverage purchased by the insured.

86. Such a methodology constitutes gap coverage rather than the excess UIM coverage required by Pennsylvania law.

87. For decades, Pennsylvania appellate courts have recognized that Pennsylvania's statutory definition of an underinsured motor vehicle requires excess, rather than gap, UIM coverage and that amounts recovered from a tortfeasor therefore may not be used to reduce the insured's stated UIM policy limits. See, e.g., Allwein v. Donegal Mut. Ins. Co., 671 A.2d 744 (Pa. Super. 1996); Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180 (Pa. 2008); AAA Mid-Atlantic Ins. Co. v. Ryan, 84 A.3d 626 (Pa. 2014).

88. Westfield applied precisely the gap-style methodology prohibited by Pennsylvania law.

89. Rather than determining the plaintiffs, Dean R. Englehart and Robbin L. Englehart's total compensatory damages, subtracting the amounts recovered from the tortfeasor, and determining whether uncompensated damages remained for which UIM coverage was available, Westfield applied the tort recoveries directly against the plaintiffs' $200,000.00 per-person UIM limits.

90. The effect of Westfield's methodology is particularly apparent with respect to Robbin because her $173,000.00 tort recovery, when applied by Westfield directly against her $200,000.00 UIM limit, would leave no more than $27,000.00 in available UIM coverage regardless of the amount of her total compensatory damages, thereby rendering $173,000.00 of the $200,000.00 in UIM coverage purchased under the Policy unavailable to her solely because she recovered $173,000.00 from the tortfeasor.

91. Westfield's methodology therefore converted the excess UIM coverage purchased by the plaintiffs into gap coverage by reducing the stated UIM limits based upon the amount of liability insurance recovered from the tortfeasor.

92. At the time of its denial, Westfield was engaged in the business of issuing automobile insurance policies and adjusting UIM claims in Pennsylvania and knew, or recklessly disregarded, Pennsylvania law governing the UIM coverage it issued to the plaintiffs.

93. Notwithstanding this established Pennsylvania law, Westfield expressly represented to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, that its application of their tort recoveries to reduce the amount of UIM coverage available under the Policy was "[i]n accordance with Pennsylvania law," despite Pennsylvania's excess-coverage framework requiring tort recoveries

to be applied against an insured's total compensatory damages rather than against the stated UIM policy limits.

94. As such, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, seek a declaration on behalf of each member of the class in Count I asking the Court to determine that the Westfield Policies must provide underinsured motorist coverage in accordance with Pennsylvania law and without the unlawful application of liability credits against the stated UIM policy limits, as Westfield has done in denying the plaintiffs' claims.

95. In Count I of the Second Amended Complaint, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, seek a declaration on behalf of each member of the class that the policies of insurance issued by the defendant, Westfield, under which benefits were claimed but denied, must be interpreted and applied in accordance with Pennsylvania's excess coverage framework for underinsured motorist benefits, and not through the gap-style offset method relied upon by Westfield.

96. Count I does not seek to solely adjudicate past conduct. In fact, Count I seeks declaratory relief in connection with the past, present, and future conduct of the defendant, Westfield, in applying unlawful liability offsets to reduce the stated UIM policy limits in violation of Pennsylvania law and the terms of the Westfield Policies.

97. Count I, similarly, does not seek to adjudicate liability, nor does it request any assessment of negligence or damages. On the contrary, Count I seeks declaratory relief that the defendant, Westfield, is required to apply underinsured motorist coverage in accordance with Pennsylvania law and may not reduce UIM limits through the use of gap-style liability offsets that are contrary to the excess-coverage structure mandated by Pennsylvania appellate authority.

98. Despite these clear legal requirements, the defendant, Westfield, improperly reduced

the plaintiffs' available UIM coverage by applying a credit for payments made by the tortfeasor against the policy's UIM limits rather than against the plaintiffs' total damages, in direct contravention of established Pennsylvania law.

99. The conduct of the defendant, Westfield, was specifically designed to deny and limit the payment of benefits to its insureds, Dean R. Englehart and Robbin L. Englehart, and to attempt to force them to abandon legally valid and cognizable claims for benefits that remain due and owing under the policy of insurance.

100. The defendant, Westfield, has breached the terms, agreements, promises and provisions of the Westfield Policy.

101. Throughout the course of its handling of the claims of the plaintiffs, Dean R. Englehart and Robbin L. Englehart, the defendant, Westfield, has failed to provide pertinent benefits, coverages and other entitlements owed under the policy, despite being aware of its obligation to do so.

102. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, have complied with all terms, conditions, and obligations under the Westfield Policy, and have satisfied all conditions precedent to the recovery of underinsured motorist benefits.

103. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, have sustained damages, including serious and permanent bodily injuries, medical expenses, lost wages, loss of earning capacity, out-of-pocket expenses, and pain and suffering, in amounts far exceeding the liability limits available from Arch Insurance, thereby entitling them to UIM benefits under the Westfield Policy, which Westfield has willfully and recklessly denied.

104. As a result of Westfield's wrongful denial of UIM benefits and misapplication of Pennsylvania law, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, have been deprived of

benefits claimed to be due and owing under the Westfield Policy and have been required to pursue this action to obtain the benefits and other relief to which they contend they are entitled.

**Class Action Allegations**

105. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, bring this action individually and on behalf of a class of similarly situated persons as a class action pursuant to the Federal Rules of Civil Procedure.

106. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, seek declaratory relief, alone, on behalf of the class. No monetary damages are sought on behalf of the class in this case. Liability and damage issues are not pertinent to the relief sought on behalf of the class. On behalf of the class, the Second Amended Complaint only seeks a declaration that policies issued by the defendant, Westfield, are required to apply underinsured motorist coverage in accordance with Pennsylvania law and may not be interpreted or applied through the unlawful use of gap-style liability offsets that reduce the stated UIM policy limits, as Westfield has done in denying UIM claims.

107. The defendant, Westfield, has systematically and wrongfully denied UIM benefits under personal auto policies issued in the Commonwealth of Pennsylvania by applying liability credits directly against the stated UIM policy limits, rather than against the claimant's total damages, thereby depriving insureds of benefits to which they are entitled under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

108. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, seek to represent a class of persons seeking declaratory relief, alone, defined as follows:

> All Pennsylvania insureds who, within four (4) years preceding the filing of this action and continuing through the date of class certification, satisfy each of the following criteria:

(a) who sustained injury in a motor vehicle accident in Pennsylvania;

(b) who were the named insured or an insured under a policy issued by Westfield in the Commonwealth of Pennsylvania providing UIM coverage in accordance with the MVFRL;

(c) who made claim for recovery of UIM benefits under a Westfield policy; and

(d) whose claim for recovery of UIM benefits was denied, in whole or in part, by Westfield's application of liability credits against the UIM policy limits rather than against the claimant's total damages.

109. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, reserve the right to amend the class definition and/or identify additional subclasses upon completion of class certification proceedings.

110. The putative class is limited to residents of the Commonwealth of Pennsylvania in numbers sufficient to allow class certification.

111. The class period is expressly limited to claims that accrued on or after October 28, 2021, four years prior to the filing of this action, to ensure that no time-barred claims are included within the class. The filing of this action on October 28, 2025 tolled the statute of limitations for all putative class members whose claims were not already time barred.

112. For purposes of class membership, a claim is deemed to have accrued when Westfield issued a written denial of UIM benefits through the unlawful application of liability credits against the stated UIM policy limits. The accrual date is therefore objectively ascertainable from Westfield's own claim records, making the class readily identifiable and administratively feasible.

113. Class membership is determined solely by the objective fact that Westfield issued a written UIM determination applying liability credits against the stated UIM policy limits. Whether

that uniform method of applying offsets is lawful under Pennsylvania law is a common legal question to be adjudicated in Count I and is not part of the class-membership inquiry.

114. Class members can be identified through a review of Westfield's electronic claim systems and written UIM denial letters, which uniformly document the application of liability credits to the stated UIM policy limits.

115. The members of the class are so numerous that joinder of them is impracticable.

116. A class action is the only practicable means available for the members of the class to pursue appropriate remedies and receive the UIM benefits owed under the policies of insurance in question.

117. A class action is the only practicable means available to prevent the defendant, Westfield, from engaging in the continuous and systematic illegal and unlawful conduct under the MVFRL and to remedy the harm created by this conduct.

118. The questions of law and fact are common to the members of the class which the plaintiffs, Dean R. Englehart and Robbin L. Englehart, seek to represent.

119. The questions of law and fact common to the members of the class predominate over questions that may affect only individual members.

120. The central question of law presented in Count I, whether Pennsylvania law permits Westfield to apply liability credits against the stated UIM policy limits rather than against the claimant's total damages, is a common question capable of classwide resolution in a single determination. The validity of Westfield's uniform offset methodology does not depend on any class member's individual accident facts, injuries, or damages, and resolution of this legal issue will apply equally to every member of the class.

121. Any individualized issues relating to fault, coverage defenses, exclusions, priority of coverage, damages thresholds, or other reasons Westfield may have asserted when evaluating particular UIM claims do not defeat commonality because Count I does not seek certification of breach of contract or individualized bad faith claims. The declaratory relief sought on behalf of the class concerns only Westfield's uniform practice of applying liability offsets against UIM limits, a practice that presents a single question of law common to every class member.

122. The common question of law presented in Count I, whether Pennsylvania law permits Westfield to apply liability credits against the stated UIM policy limits rather than against the claimant's total damages, predominates over any individualized issues because this question can be resolved for all class members through generalized, classwide proof. The declaratory relief sought on behalf of the class does not require the Court to determine fault, evaluate damages, analyze policy exclusions, assess the adequacy of Westfield's claim-handling, or resolve any individualized defenses. These individualized issues pertain, if at all, only to the breach of contract and bad faith claims asserted by the individual plaintiffs. In contrast, Count I presents a single, uniform legal question arising from Westfield's standardized use of the same offset methodology in written UIM determinations, making classwide adjudication not only appropriate but superior to individual litigation.

123. The common questions of law and fact that predominate over any individual issues in this litigation include, but are not limited to, the following:

(a) Whether each member of the class sustained injury as a result of the negligence of an underinsured motorist;

(b) Whether each member of the class was a named insured or an insured claimant seeking recovery of underinsured motorist benefits under a policy of insurance issued by the defendant, Westfield;

(c) Whether the defendant, Westfield, improperly denied UIM benefits to class members by applying liability credits against the UIM policy limits rather than against the total damages sustained;

(d) Whether each class member is entitled to a declaration that he/she is eligible to recover UIM benefits for the full amount of the coverage without any offset for the limits of liability coverage of the tortfeasor; and

124. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are members of the class they seek to represent.

125. The claims of the plaintiffs, Dean R. Englehart and Robbin L. Englehart, are typical of the claims of other members of the class which they purport to represent.

126. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are well qualified to act as class representatives.

127. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, will fairly and adequately protect the interests of the members of the class.

128. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, have no interests that are adverse or antagonistic to the interests of the members of the class.

129. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are committed to prosecuting this class action.

130. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, have retained competent counsel experienced in litigation of this nature.

131. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

132. Joinder of all class members is impracticable and the likelihood of individual class members prosecuting separate claims is remote, particularly given that many do not know they are entitled to UIM benefits.

133. The expense and burden of individual litigation makes it unlikely that a substantial number of class members will individually seek redress for the wrongs done to them.

134. Concentrating this litigation in this forum is desirable for the fair, efficient, and consistent adjudication of the claims.

135. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, anticipate no difficulty in the management of this action as a class action.

136. Prosecution of separate actions by individual class members would create the risk of inconsistent determinations that could subject the defendant, Westfield, to incompatible standards of conduct and prejudice non-parties to any adjudication or substantially impede their ability to protect their own interests because of the overriding common questions of law and fact involved in the matter.

137. Prosecution of these claims seeking declaratory relief, alone, on behalf of the class, will result in the orderly and expeditious administration of the claims and foster economies of time, effort, and expense.

138. Prosecution of these claims seeking declaratory relief , alone, on behalf of the class will contribute to uniformity of decisions concerning the practices of Westfield.

**COUNT I**
**(Declaratory Relief –Members of the Class)**

139. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, hereby incorporate by reference the foregoing paragraphs 1 through 138 of this Second Amended Complaint as though the same were fully set forth herein.

140. This claim for declaratory relief is not duplicative of the breach of contract claim in Count II. On the contrary, Count I of the Second Amended Complaint seeks only declaratory relief and not any award of monetary damages.

141. This Count I seeks a declaration that policies issued by the defendant, Westfield, are required to apply underinsured motorist coverage in accordance with Pennsylvania law and may not be interpreted or applied through the unlawful use of gap-style liability offsets that reduce the stated UIM policy limits, as Westfield has done in denying UIM claims.

142. This Count I is in no way duplicative of the relief sought in Count II of the Second Amended Complaint. This Count seeks to have the policies at issue declared to provide underinsured motorist coverage in accordance with Pennsylvania law and without the unlawful application of gap-style liability offsets that reduce the stated UIM policy limits, as the defendant, Westfield, has done in denying UIM claims. This Count I seeks declaratory relief, alone. Count II seeks breach of contract and monetary damages on behalf of the individual plaintiffs, alone.

143. While this Count I seeks declaratory relief concerning the manner in which the defendant, Westfield, applies underinsured motorist coverage on behalf of members of the class, this Count I does not seek to adjudicate any issues of liability and damage. On the contrary, this Count I addresses the past, present, and future conduct of the defendant, Westfield. In the past, the defendant, Westfield, denied and disclaimed coverage under policies where it wrongfully and

improperly reduced underinsured motorist benefits by applying liability credits against the stated UIM policy limits rather than against the total damages sustained by the insureds, in direct contravention of Pennsylvania law. Presently, the defendant, Westfield, continues to deny coverage in the Commonwealth of Pennsylvania under policies issued by the defendant, Westfield, through the continued use of gap-style liability offsets that are contrary to Pennsylvania's excess-coverage framework for UIM benefits. In the future, it is believed, and therefore averred, that the defendant, Westfield, will continue to engage in this willful and wanton conduct in refusing to provide underinsured motorist coverage in accordance with Pennsylvania law, as is evidenced by its ongoing past, present, and anticipated future refusal to provide UIM benefits to the individual plaintiffs, Dean R. Englehart and Robbin L. Englehart, and to members of the class.

144. The relief sought in Count I is necessary to determine the proper scope and application of underinsured motorist coverage under the policies issued by the defendant, Westfield. Count II seeks recovery of underinsured motorist benefits on behalf of the individual plaintiffs, Dean R. Englehart and Robbin L. Englehart, alone, and concerns Westfield's failure to pay those benefits under the properly applied terms of the Policies. The declaratory relief sought in Count I is distinct from, and complementary to, the contractual relief sought in Count II, and each count addresses separate and independent issues arising from Westfield's conduct.

145. The Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701, et seq., defines an "Underinsured motor vehicle" as:

> A motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages.

75 Pa.C.S.A. § 1702.

146. As explained by the Pennsylvania Supreme Court:

> the structure of the MVFRL's definition of an underinsured motorist requires the provision of excess rather than gap underinsured motorist coverage because the definition is framed in terms of the total of the injured's losses rather than the injured's own insurance coverage limits.

Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180, 1191 (Pa. 2008).

147. "Because the MVFRL requires excess underinsurance coverage, not gap underinsurance coverage, the insurer [can] not offset the amount its insured received from the tortfeasor's insurer against the amount the insurer was required to pay pursuant to its policy." AAA Mid-Atlantic Ins. Co. v. Ryan, 84 A.3d 626, 629 (Pa. 2014).

148. Notwithstanding, in the present matter, the defendant, Westfield, has improperly denied UIM benefits by applying liability credits against the UIM policy limits, rather than against the total damages sustained.

149. The denial of benefits by the defendant, Westfield, is violative of the explicit terms and conditions of the Pennsylvania MVFRL.

150. The defendant, Westfield, is required to make available the full amount of underinsured motorist benefits stated in the policy, without any offset or reduction for amounts received by its insureds from a tortfeasor.

151. Each member of the class is entitled to a declaration that the defendant, Westfield, is required to make available to them the full amount of UIM benefits stated in their respective policies, without any offset or reduction for amounts received from a tortfeasor.

152. The controversy involves substantial rights of the parties to the action.

153. A judgment of this court in this action will also be useful for the purpose of clarifying and settling the legal relations at issue between the parties.

154. The members of the putative class are entitled to a declaration that the defendant, Westfield, is required to make available to them the full amount of the UIM benefits under the pertinent policies of insurance issued by the defendant, Westfield, without any offset or reduction for amounts received from the tortfeasor.

WHEREFORE, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, respectfully request that the Court enter an Order:

(a) declaring that each member of the class is entitled to a declaration that the defendant, Westfield, is required to make available to them the full amount of UIM benefits stated in the pertinent policies, without any offset, or reduction for amounts received from the tortfeasor; and

(b) such other relief as the court deems appropriate.

**COUNT II**
**(Breach of Contract – Underinsured Motorist Benefits – Individual Plaintiffs Only)**

155. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, hereby incorporate by reference the foregoing paragraphs 1 through 154 of this Second Amended Complaint as though the same were fully set forth herein.

156. This Count is a breach of contract claim seeking monetary relief on behalf of the individual plaintiffs, Dean R. Englehart and Robbin L. Englehart, alone. This breach of contract claim is not asserted on behalf of the class.

157. On October 29, 2023, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, sustained serious and permanent injuries as a result of the negligence, carelessness and recklessness of an underinsured motorist, Michael A. Miller.

158. At the time of the collision, the personal auto policy of insurance issued by the defendant, Westfield, was in full force and effect.

159. The Westfield Policy provides $100,000.00/$300,000.00 in UIM benefits, stacked for two (2) vehicles, for a total of $200,000.00 in available UIM benefits per person in accordance with the provisions of the Pennsylvania MVFRL, 75 Pa.C.S.A. § 1701 et seq.

160. The Underinsured Motorist Coverage Part of the personal auto policy issued by the defendant, Westfield, to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, provides, in pertinent part, as follows:

> We will pay compensatory damages which an ***insured*** is legally entitled to recover from the owner or operator of an ***underinsured motor vehicle***, because of ***bodily injury***:
>
> 1. Sustained by an ***insured***; and
>
> 2. Caused by an accident.

Exhibit "A", Underinsured Motorist Coverage – Pennsylvania Endorsement.

161. The personal auto policy issued by the defendant, Westfield, to the plaintiffs Dean R. Englehart and Robbin L. Englehart, defines "insured" as follows:

> ***"Insured"*** as used in this endorsement means:
>
> **1.** You or any family member.
> **2.** Any other person ***occupying your covered auto***.
> **3.** Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2 above.

Id.

162. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are both named insureds shown on the Declarations Page of the policy of insurance issued by Westfield. See Exhibit "A".

163. The personal auto policy issued by the defendant, Westfield, defines an "underinsured motor vehicle" as follows:

> ***"Underinsured motor vehicle"*** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for ***bodily injury*** under that bond or policy to an ***insured*** is not enough to pay the full amount the ***insured*** is legally entitled to recover as damages.

Id.

164. The liability coverage available to Michael A. Miller and National Distributors Leasing, Inc. under the policy of insurance issued by Arch is insufficient to fully compensate the plaintiffs, Dean R. Englehart and Robbin L. Englehart, for the injuries they sustained in the October 29, 2023 motor vehicle collision.

165. Accordingly, the vehicle operated by Michael A. Miller and owned by National Distributors Leasing, Inc. is an "underinsured motor vehicle" as defined by the personal auto policy and Pennsylvania law.

166. As a result of the October 29, 2023 motor vehicle collision, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, sustained serious and permanent injuries and damages which are set forth more fully above.

167. The personal injuries and damages sustained by the plaintiffs, Dean R. Englehart and Robbin L. Englehart, were caused by the negligence and carelessness of the underinsured motorist, Michael A. Miller.

168. The negligence and carelessness of the underinsured tortfeasor, Michael A. Miller, consisted of, but was not limited to, the following:

(a) failing to keep the vehicle under proper and adequate control;

(b) failing to be attentive to the road, traffic conditions and/or traffic signals;

(c) failing to keep a proper lookout;

(d) failing to give proper and sufficient warning of the approach of the vehicle;

(e) operating the vehicle at an excessive rate of speed under the circumstances;

(f) failing to operate the vehicle in a safe and attentive manner;

(g) failing to bring said vehicle to a stop prior to striking the vehicle of the plaintiffs, Dean R. Englehart and Robbin L. Englehart;

(h) causing his vehicle to violently collide with the vehicle of the plaintiffs, Dean R. Englehart and Robbin L. Englehart;

(i) failing to take evasive action to avoid colliding with the vehicle of the plaintiffs, Dean R. Englehart and Robbin L. Englehart;

(j) operating the vehicle in a negligent, careless and reckless manner without due regard for the rights, safety and position of the vehicle of the plaintiffs, Dean R. Englehart and Robbin L. Englehart;

(k) failing to apply the brakes in sufficient time so as to avoid striking the vehicle of the plaintiffs, Dean R. Englehart and Robbin L. Englehart;

(l) failing to yield the right of way to the vehicle of the plaintiffs, Dean R. Englehart and Robbin L. Englehart;

(m) failing to stop at a red traffic signal;

(n) improperly entering an intersection on a red traffic light;

(o) entering an intersection when it was not safe to do so;

(p) violating 75 Pa.C.S.A. §3112, *Traffic-control signals*;

(q) violating 75 Pa.C.S.A. §3714, *Careless driving*;

(r) violating 75 Pa.C.S.A. §3736, *Reckless driving;* and

(s) violating 75 Pa.C.S.A. §3361, *Driving vehicle at safe speed.*

169. Following the collision, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, made claim upon the defendant, Westfield, seeking recovery of underinsured motorist benefits under the Westfield Policy.

170. Upon receipt of the claim for recovery of underinsured motorist benefits under the Policy, the defendant, Westfield, denied and disclaimed coverage for the underinsured motorist claims of the plaintiffs, Dean R. Englehart and Robbin L. Englehart.

171. Under the terms of the Westfield Policy, the defendant, Westfield, was contractually obligated to pay compensatory damages which the plaintiffs, Dean and Robbin Englehart, were legally entitled to recover from the underinsured motorist as a result of the serious and permanent injuries they sustained in the October 29, 2023 collision.

172. Notwithstanding this contractual obligation, the defendant, Westfield, has failed and refused to properly, timely, or reasonably investigate or evaluate the underinsured motorist claims of the plaintiffs and has failed and/or refused to pay underinsured motorist benefits which were due and owing under the Westfield Policy.

173. Despite extensive medical documentation, objective diagnostic evidence, surgical procedures, and clear medical opinions establishing the serious, permanent, and disabling nature of the injuries suffered by the plaintiffs, the defendant, Westfield, failed and refused to acknowledge or evaluate the full extent of the plaintiffs' damages and failed and/or refused to tender any amount representing the value of the compensatory damages they were legally entitled to recover.

174. The defendant, Westfield, failed and/or refused to conduct a meaningful investigation, ignored the medical records and opinions of the treating providers of the plaintiffs, failed to reasonably assess the nature and extent of the injuries suffered, and intentionally disregarded documented economic and noneconomic losses, all of which resulted in an improper refusal and failure to pay benefits owed under the policy.

175. The refusal of the defendant, Westfield, to investigate, evaluate, and pay the underinsured motorist claims of the plaintiffs constitutes a breach of the duties, obligations, and

promises set forth in the Westfield Policy and a breach of the contractual requirement to pay all compensatory damages which the plaintiffs were legally entitled to recover from the underinsured motorist.

176. As a direct and proximate result of the defendant's breach of contract, the plaintiffs, Dean and Robbin Englehart, have been denied underinsured motorist benefits that were due and owing to them under the Westfield Policy, and have suffered damages including, but not limited to, uncompensated medical expenses, loss of earnings, loss of earning capacity, pain and suffering, impairment, and loss of life's pleasures.

177. Although Westfield failed to meaningfully investigate or evaluate the plaintiffs' injuries and damages, the basis for the denial and disclaimer of coverage for the underinsured motorist claims of the plaintiffs, Dean R. Englehart and Robbin L. Englehart, was that:

> ***In accordance with Pennsylvania law, these credits [for the liability coverage of the tortfeasor] are applied to <u>reduce the available UIM coverage</u>. As both credits meet or exceed the applicable UIM limit of $200,000 per person, no UIM benefit is payable under the terms of the Westfield policy.***

See the denial and disclaimer of coverage of Westfield at Exhibit "E".

178. The denial and disclaimer of coverage of the defendant, Westfield, is contrary to Pennsylvania law and the terms and conditions of the Westfield Policy.

179. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are eligible to recover underinsured motorist benefits from the defendant, Westfield, under the personal auto policy in question in connection with the injuries sustained in the October 29, 2023 motor vehicle collision.

180. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are eligible to recover up to $200,000.00 each in underinsured motorist benefits from the defendant, Westfield, under the

personal auto policy in question in connection with the injuries sustained in the October 29, 2023 motor vehicle collision.

181. The defendant, Westfield, has failed and refused to make available any underinsured motorist benefits to the plaintiffs, Dean R. Englehart and Robbin L. Englehart.

182. The defendant, Westfield, has breached the Personal Auto Policy by failing to make available underinsured motorist benefits in the amount provided for in the policy of insurance in question.

183. The defendant, Westfield, has breached the Personal Auto Policy by failing to properly and sufficiently investigate, evaluate, and pay the UIM claim in accordance with Pennsylvania law.

184. The defendant, Westfield, has wrongfully refused to provide underinsured motorist benefits to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, by reason of its unlawful application of liability credits against the UIM policy limits.

185. The denial of underinsured motorist benefits to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, is a material breach of the Westfield Policy.

186. The denial of underinsured motorist coverage to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, by reason of its applying liability credits against the UIM policy limits, rather than against the total damages sustained, is in direct violation of the specific terms and provisions of the MVFRL.

187. As a result of Westfield's breach of contract, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, have been deprived of the insurance benefits they purchased and for which they paid premiums, and have suffered and will continue to suffer economic loss, pain, and diminished quality of life.

188. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, are entitled to recover underinsured motorist benefits under the Westfield Policy in connection with injuries sustained in the October 29, 2023 motor vehicle collision.

WHEREFORE, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, respectfully request that this Honorable Court enter an Order:

(a) Awarding underinsured motorist benefits to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, and against the defendant, Westfield Insurance Company, in connection with the injuries and damages they sustained in the October 29, 2023 motor vehicle collision;

(b) Awarding all consequential common law damages to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, against the defendant, Westfield Insurance Company, by reason of the breach of the duties of good faith and fair dealing.

**COUNT III**
**(Statutory Bad Faith – Individual Plaintiffs)**

189. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, incorporate by reference the foregoing paragraphs 1 through 187 of this Second Amended Complaint as though the same were fully set forth herein.

190. At all relevant times, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, were insureds under the Westfield Policy and were entitled to the protections afforded by Pennsylvania law in connection with Westfield's investigation, evaluation, and handling of their claims for UIM benefits.

191. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, complied with the terms, conditions, and obligations of the Westfield Policy applicable to their UIM claims, including providing notice of their claims, cooperating with Westfield, obtaining Westfield's consent to settle with the tortfeasor, and providing Westfield with medical, employment, economic, and other documentation supporting their claims.

192. By correspondence dated June 9, 2025, the plaintiffs provided Westfield with a comprehensive submission documenting their injuries, medical treatment, permanent impairments, economic losses, and other damages arising from the October 29, 2023 collision. See Exhibit “D”.

193. By correspondence dated August 8, 2025, Westfield acknowledged its review of the plaintiffs’ medical records, employment documentation, and supporting exhibits but denied payment of any UIM benefits. See Exhibit “E”.

194. In denying the plaintiffs’ claims, Westfield characterized Dean’s $692,000.00 tort recovery and Robbin’s $173,000.00 tort recovery as “liability credits” that reduced the $200,000.00 per-person UIM coverage available under the Westfield Policy.

195. Westfield expressly represented to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, that its application of those tort recoveries to reduce the available UIM coverage was “[i]n accordance with Pennsylvania law.”

196. Westfield’s stated methodology was contrary to Pennsylvania’s established excess-coverage framework because it applied the plaintiffs’ tort recoveries against their stated UIM policy limits rather than against their total compensatory damages.

197. Pennsylvania law has long recognized that UIM coverage constitutes excess rather than gap coverage and that amounts recovered from a tortfeasor may not be applied to reduce the stated UIM policy limits available to an insured.

198. Westfield’s stated methodology therefore converted the excess UIM coverage purchased by the plaintiffs, Dean R. Englehart and Robbin L. Englehart, into gap coverage by reducing the amount of UIM coverage available based upon the amount recovered from the tortfeasor.

199. Westfield further represented that "both credits meet or exceed the applicable UIM limit of $200,000 per person," despite the fact that Robbin's $173,000.00 tort recovery was facially less than the $200,000.00 per-person UIM limit.

200. Westfield's application of Robbin's $173,000.00 tort recovery against her $200,000.00 UIM limit would leave no more than $27,000.00 in available UIM coverage regardless of the amount of her total compensatory damages.

201. At the time of its August 8, 2025 denial, Westfield was engaged in the business of issuing automobile insurance policies and investigating, evaluating, and adjusting UIM claims in Pennsylvania.

202. As an insurer issuing and adjusting UIM coverage in Pennsylvania, Westfield knew, or recklessly disregarded, Pennsylvania law governing the excess nature of the UIM coverage it sold to the plaintiffs.

203. Despite that knowledge, Westfield affirmatively represented to its insureds that reducing their available UIM coverage by the amount of their tort recoveries was "[i]n accordance with Pennsylvania law."

204. Westfield's handling and evaluation of the plaintiffs' UIM claims was unreasonable for the additional and independent reason that Westfield failed to reasonably account for and reconcile material medical and economic evidence favorable to the plaintiffs that was contained within the claim materials Westfield acknowledged reviewing.

205. Under Pennsylvania law, when conflicting facts arise during an insurer's investigation and evaluation of a claim, the insurer may not simply accept the version that favors its own interests but must "actively undertake a meaningful investigation to obtain accurate information." Rancosky

v. Washington National Insurance Co., 130 A.3d 79, 98 (Pa. Super. Ct. 2015), aff'd, 170 A.3d 364 (Pa. 2017).

206. Similarly, an insurer may not disregard evidence favorable to its insured or exclusively focus upon information weighing against coverage or payment while failing to consider evidence supporting the insured's claim. See Tomaszewski v. Allstate Insurance Co., No. 21-2452, 2022 U.S. Dist. LEXIS 197302, at *41 (E.D. Pa. Oct. 31, 2022); Mohney v. American General Life Insurance Co., 116 A.3d 1123, 1136 (Pa. Super. Ct. 2015); Bonenberger v. Nationwide Mutual Insurance Co., 791 A.2d 378, 380–81 (Pa. Super. Ct. 2002).

207. With respect to Dean R. Englehart, Westfield acknowledged Dr. Richard J. Mandel's finding of approximately fifty percent (50%) loss of grip and pinch strength in Dean's dominant right hand but nevertheless concluded that Dean's symptoms had resolved by March 2024 and characterized his future treatment as "speculative."

208. At the time Westfield reached that conclusion, it possessed Dr. Mandel's November 22, 2024 report documenting objective loss of grip and pinch strength, permanent fifty percent (50%) weakness of Dean's dominant right hand, continuing pain, mild muscle atrophy, maximum medical improvement, a poor prognosis for further improvement, and the likelihood of future post-traumatic arthrosis.

209. Westfield also possessed Dr. Mandel's opinion that Dean's permanent dominant-hand impairment was particularly significant because his preexisting paraplegia prevented him from using his lower body to compensate for the diminished function of the hand upon which he depended for his mobility and independence.

210. Westfield nevertheless concluded that Dean's $692,000.00 tort recovery fully compensated him for his injuries and damages without identifying any contrary medical examination or medical opinion supporting its rejection or discounting of Dr. Mandel's findings and opinions.

211. With respect to Robbin Englehart, Westfield characterized her injuries as "soft-tissue injuries" and her psychological condition as "temporary psychological distress" despite possessing documentation of her traumatic hematoma, cellulitis, antibiotic treatment, wound care, debridement, medication, and psychological counseling.

212. Westfield further characterized Robbin as having "elected to retire approximately five months" after the collision despite having been advised that she had worked for the same employer since 1980, sustained accident-related wage loss, experienced continuing difficulty performing her employment duties, planned to continue working until retirement, and retired early as a result of her accident-related injuries.

213. At the time Westfield evaluated Robbin's claim, it possessed documentation establishing approximately $40,000.00 in medical expenses, approximately $11,462.40 in pre-retirement lost earnings, and a claim for additional loss of future earnings resulting from her accident-related early retirement.

214. Westfield nevertheless concluded that Robbin's $173,000.00 tort recovery fully compensated her for her injuries, lost earnings, and other damages without reasonably accounting for or reconciling the medical and economic evidence contained within the materials Westfield acknowledged reviewing.

215. Westfield's denial was therefore not based solely upon a good-faith disagreement concerning the ultimate value of the plaintiffs' claims but was also based upon an unlawful methodology that reduced the amount of UIM coverage available by the amount of Plaintiffs' tort

recoveries and evaluations of Plaintiffs' damages that failed to reasonably account for material contrary evidence contained within Westfield's own claim materials.

216. Westfield lacked a reasonable basis for applying the plaintiffs' tort recoveries against their stated UIM policy limits and representing that such methodology was "[i]n accordance with Pennsylvania law."

217. Westfield further lacked a reasonable basis for its evaluation and denial of the plaintiffs' UIM claims in light of the material medical and economic evidence contained within the claim materials Westfield acknowledged reviewing.

218. Westfield knew that it lacked a reasonable basis for its denial of the plaintiffs' UIM claims or recklessly disregarded the absence of such a reasonable basis.

219. Westfield's knowledge or reckless disregard is evidenced, inter alia, by its experience issuing and adjusting UIM coverage in Pennsylvania, its affirmative representation that its gap-style methodology complied with Pennsylvania law, its facially incorrect statement that Robbin's $173,000.00 tort recovery met or exceeded her $200,000.00 UIM limit, and its failure to reasonably account for or reconcile material medical and economic evidence contained within the claim materials it acknowledged reviewing.

220. Westfield's conduct in investigating, evaluating, and denying the plaintiffs' claims for UIM benefits constitutes bad faith toward its insureds within the meaning of 42 Pa.C.S.A. § 8371.

221. As a result of Westfield's statutory bad faith, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, are entitled to the remedies authorized by 42 Pa.C.S.A. § 8371, including interest on the amount of their claims, an award of punitive damages, court costs, and reasonable attorney's fees.

WHEREFORE, the plaintiffs, Dean R. Englehart and Robbin L. Englehart, respectfully

request that the Court enter an Order awarding interest, counsel fees, costs and punitive damages to the plaintiffs, Dean R. Englehart and Robbin L. Englehart, against the defendant, Westfield, in an amount in excess of $50,000.00.

**COUNT IV**
**(Plaintiff, Robbin L. Englehart v. Defendant, Westfield**
**Loss of Consortium)**

222. The plaintiffs, Dean R. Englehart and Robbin L. Englehart, hereby incorporate by reference the foregoing paragraphs 1 through 221 of this Second Amended Complaint as though the same were fully set forth herein.

223. Robbin L. Englehart is the lawful spouse of Dean R. Englehart.

224. As a result of the negligence and carelessness of the underinsured motorist, Michael A. Miller, Robbin L. Englehart has suffered past, present and future loss of consortium, including, but not limited to:

(a) Loss of companionship of Dean R. Englehart;

(b) Loss of marital fellowship of Dean R. Englehart; and

(c) Loss of company, society, cooperation, affection and aid of Dean R. Englehart.

225. The plaintiffs are entitled to damages from Westfield for all of the damages sustained in the accident in question.

226. The defendant, Westfield, has breached the terms, agreements, promises and provisions of the policies of insurance covering the plaintiffs by failing to make payment of underinsured motorist benefits in an amount which is fair, reasonable and fully compensates them for the loss.

WHEREFORE, the plaintiff, Robbin L. Englehart, demands judgment in her favor and against the defendant, Westfield, for all recoverable loss of consortium damages.

HAGGERTY, GOLDBERG,
SCHLEIFER & KUPERSMITH, P.C.

BY: /s/ Dennis C. Coyne
James C. Haggerty, Esquire;
Jeffrey K. Stanton, Esquire
Dennis C. Coyne, Esquire
I.D. # 30003; 311249; 316918
1801 Market Street
Suite 1100
Philadelphia, PA 19103
(267) 350-6600

Date: October 13, 2026